JOSHUA D. HURWIT, IDAHO STATE BAR NO. 9527
UNITED STATES ATTORNEY
KASSANDRA J. MCGRADY, IDAHO STATE BAR NO. 8455
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
1290 W. MYRTLE ST., SUITE 500
BOISE, ID 83702
TELEPHONE: (208) 334-1211

<div style="text-align:center">

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

</div>

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br>　vs.<br><br>RICHARD ALAN STANSELL,<br><br>　　　　　Defendant. | Case No. 1:22-CR-00111-AKB<br><br>**GOVERNMENT'S SENTENCING MEMORANDUM** |

The United States of America, by and through Joshua D. Hurwit, United States Attorney, and the undersigned Assistant United States Attorney for the District of Idaho, submits the following memorandum setting forth the Government's position at sentencing. The Government recommends that the Court sentence the Defendant to a term of imprisonment of 135 months, which is at the low-end of the guideline range, followed by 20 years of supervised release. A sentence below the guideline range is not supported by the § 3553(a) factors and would seriously deprecate the seriousness of the offense. A sentence of 135 months, on the other hand, would adequately reflect the egregious nature of the crime, would provide appropriate justice for the victims, and would protect minor children in the community.

**GOVERNMENT'S SENTENCING MEMORANDUM - 1**

## FACTUAL BACKGROUND

### Summary of ICAC's CyberTip investigation

In October of 2021, the Internet Crimes Against Children ("ICAC") Task Force began investigating a CyberTip report from Google, two CyberTip reports from Instagram, and a CyberTip report from Facebook. According to the reports, between November 15, 2018, and May 13, 2021, several files of child pornography were uploaded to a Google account, two Instagram accounts, and a Facebook account that were later identified as belonging to the Defendant. Below is a description of just one of the files the Defendant uploaded:

- A video file that is approximately 41 seconds in length.  The video begins with a prepubescent female child who appears to be approximately 9 to 11 years of age. The child is naked from the waist down and is engaged in a sexual act.  The child has no visible pubic hair and is of diminutive stature.  The child is laying on her back with her legs spread and in the air.  The child is spreading her labia with one hand while inserting a phallus shaped object in her anus.  During the course of the video, the child rubs her bare vagina and slowly inserts the foreign phallus shaped object into her anus.

### Summary of ISP's undercover chat investigation

In January of 2022, the Idaho State Police ("ISP") began an unrelated investigation involving the Defendant. Between January 15, 2022, and April 27, 2022, the Defendant communicated through Kik Messenger with an undercover ISP detective ("UC 1") posing as a 13-year-old girl. After learning the age of the purported child, the Defendant engaged in sexually explicit conversation with the purported child, requested that the purported child send him nude photographs, and sent the purported child a video of himself masturbating. The Defendant also

discussed bestiality with the purported child and stated that he would masturbate in truck stop restrooms so that women could overhear him.

Between April 17, 2022, and April 27, 2022, the Defendant communicated through Kik Messenger with a second undercover ISP detective ("UC 2") posing as a 13-year-old girl. After learning the age of the child, the Defendant engaged in sexually explicit conversation with the purported child and sent the purported child pictures of his penis and a video of himself masturbating. During the communications, the Defendant discussed using methamphetamine to keep himself awake and sexually aroused.

***Excerpts from the Kik Messenger chats***

The Presentence Investigation Report ("PSR") references the Kik Messenger chats between the Defendant and the UCs, but it does not contain information about the specific statements that the Defendant made to the purported children, which are graphic and disturbing. Below are excerpts from the chats: [1]

### *Chats with UC 1*

| | |
|---|---|
| **DEFENDANT:** | Hey what's up |
| **UC 1:** | Sittin in class. Hbu |
| **DEFENDANT:** | Sitting in class what kind of class |
| **UC 1:** | Algebra |
| **DEFENDANT:** | Algebra? Are you still in high school |
| **UC 1:** | Middle school |

---

[1] The following passages are excerpts of the chats and do not represent the complete conversations between the Defendant and the undercover detectives. The entire conversations have been provided to the Defendant in discovery. The excerpts are also found in the complaint affidavit that was filed in this case at 1:22-mj-00126-DKG (ECF No. 1). Any typographical or grammatical errors in the chats are found in the original chats. Breaks in the chat are denoted with "………."

**GOVERNMENT'S SENTENCING MEMORANDUM - 3**

| | |
|---|---|
| **UC 1:** | Wyd |
| **DEFENDANT:** | Wait what |
| **DEFENDANT:** | How old are you again |
| **UC 1:** | I'm almost 14 |
| **DEFENDANT:** | 13? |
| **UC 1:** | Yeah. Hbu |
| **DEFENDANT:** | 45 |

………………………………………………………………………

| | |
|---|---|
| **DEFENDANT:** | When you said 13 do you want to know what happened |
| **UC 1:** | What's that? |
| **DEFENDANT:** | Promise not to tell anyone |
| **UC 1:** | Yeah |
| **DEFENDANT:** | My dick got hard |
| **UC 1:** | (sends smiley face emoji) |
| **DEFENDANT:** | So you are sitting in algebra class right now? |
| **UC 1:** | Ye |
| **UC 1:** | Yep |
| **DEFENDANT:** | And instead of paying attention you are having naughty thoughts |
| **UC 1:** | Maybe |
| **DEFENDANT:** | Well maybe this will help while you are sitting there in class I'm laying here on my bed thinking about your tight young pussy while I am stroking my cock |

**GOVERNMENT'S SENTENCING MEMORANDUM - 4**

| | |
|---|---|
| UC 1: | Rly? |
| DEFENDANT: | Oh yeah |
| DEFENDANT: | Do you like that |
| UC 1: | Yes |
| DEFENDANT: | Show me how naughty you are |
| DEFENDANT: | Do you have any videos |
| DEFENDANT: | Or pics |
| UC 1: | Not naughty ones |

……………………………………………………………………..

| | |
|---|---|
| DEFENDANT: | You're home so you can send pics some pics or vids now? |
| UC 1: | I don't rly want to send those kinds of pics out |
| DEFENDANT: | Ok |

……………………………………………………………………

| | |
|---|---|
| DEFENDANT: | Never had an orgasm? |
| UC 1: | I don't think so |
| DEFENDANT: | Are you alone |
| UC 1: | Mostly |
| DEFENDANT: | Mostly? |
| UC 1: | Well I'm not home alone. But my mom is in the other room |
| DEFENDANT: | Just you and your mom |
| UC 1: | Yeah |
| DEFENDANT: | Want to see a video of a girl having an orgasm |
| UC 1: | Sure |

**GOVERNMENT'S SENTENCING MEMORANDUM - 5**

| | |
|---|---|
| **DEFENDANT:** | (sends a video of a female masturbating. The female in the video appears to be young, but it is difficult to determine if she is a minor). |

………………………………………………………………………….

| | |
|---|---|
| **UC 1:** | Almost lunchtime |
| **DEFENDANT:** | Do you go home |
| **UC 1:** | Nah. They don't let us leave campus in middle school |
| **DEFENDANT:** | Oh yeah that's right you are my youngster |
| **DEFENDANT:** | Well I have a 2 hour break so I'm naked and I am really wanting to cum for you, on you, in you or all of the above |
| **UC 1:** | Ok |

### *Chats with UC 2*

| | |
|---|---|
| **DEFENDANT:** | Hey wss hat are you up to |
| **DEFENDANT:** | What are you up to |
| **DEFENDANT:** | Asl please[2] |
| **DEFENDANT:** | ? |
| **UC 2:** | Nm bored in class! Hbu? |
| **UC 2:** | I'm almost 14 f |
| **UC 2:** | U? |
| **DEFENDANT:** | Almost 14? Lol |
| **DEFENDANT:** | Soooo you are 13? |
| **DEFENDANT:** | Can you chat while you are in class |

---

[2] ASL usually means someone is asking for the other person's Age, Sex, Location.

**GOVERNMENT'S SENTENCING MEMORANDUM - 6**

**DEFENDANT:** Have we chatted before

**UC 2:** Ya

**UC 2:** Idk u from Idaho?

…………………………………………………………………………………

**DEFENDANT:** Well I am pretty sure I saw your profile on a old men for young girls group is that what you are looking for an older guy

**DEFENDANT:** I'm 52

**UC 2:** O I didn't kno

**UC 2:** I like older guys but I get it if I'm young

**DEFENDANT:** You ever been with an older guy

**DEFENDANT:** Where are you from

**UC 2:** Ya

**UC 2:** Meridian

…………………………………………………………………………………..

**DEFENDANT:** I want to see your body[3]

…………………………………………………………………………………..

**DEFENDANT:** Would you fuck a 52 year old

**UC 2:** Sure

……………………………………………………………………………….

**DEFENDANT:** So do you have any other pics I want to see more of that body

[3] The Defendant made this comment after the UC sent a picture of her undercover persona. In context, it appears the Defendant is asking for photos of the 13-year-old's body.

**DEFENDANT:**     You need to be here riding my dick right now

**DEFENDANT:**     You should see what I am doing

**DEFENDANT:**     What are you doing right now

**UC 2:**     I'm just chillin

**DEFENDANT:**     So no more pics

………………………………………………………………………………

**DEFENDANT:**     sends two photos of his erect penis

……………………………………………………………………………….

**DEFENDANT:**     What are you doing

**UC 2:**     Waitin to finish school

**UC 2:**     Hbu?

**DEFENDANT:**     I am waiting to get my trailer loaded so I can head to

Colorado so I am doing nothing for the next couple of

hours except hopefully chatting with you and laying here

on my bed probably going to get high and watch some porn

and who knows what else

**DEFENDANT:**     If you had discord[4] I could video call you and you could

watch me doing what I am probably going to be doing

………………………………………………………………………………..

**DEFENDANT:**     Then you could watch me do this

**DEFENDANT:**     (Sends a video of himself rubbing his penis under his

pants.)

---

[4] Discord is another messaging application.

**GOVERNMENT'S SENTENCING MEMORANDUM - 8**

………………………………………………………………………………………

| | |
|---|---|
| **UC 2:** | Wyd? |
| **DEFENDANT:** | Sitting here on my bed getting high and wishing you were here so I could fuck your young pussy |
| **UC 2:** | Oh haha (emoji) |
| **DEFENDANT:** | Sound like fun? |

………………………………………………………………………………..

| | |
|---|---|
| **DEFENDANT:** | (sends a photo of his erect penis). |
| **DEFENDANT:** | You ready to meet this guy and see what he feels like inside of you? |

………………………………………………………………………………

Later in the conversation, the Defendant asked the UC what she was doing, and the UC responded that she was with a friend.  The Defendant asked how old the friend was and asked: "is she sexy like you." The UC responded that her friend was 13 years old. The Defendant stated: "Bring her home with you and I will come to pick you both up and you 2 can take turns sucking my dick." The Defendant asked for a picture of the UC and her friend.

The Defendant then talked more about meeting up with the 13-year-old to engage in sexual contact and stated the following:

| | |
|---|---|
| **DEFENDANT:** | Trust me I have everything to lose |
| **UC 2:** | Oh not nice! I scared to get in trouble |
| **DEFENDANT:** | I'm sorry |
| **DEFENDANT:** | You would just get in a little trouble I would go to prison |
| **DEFENDANT:** | So you know I'm not saying anything |

**GOVERNMENT'S SENTENCING MEMORANDUM - 9**

The conversation continued with the Defendant talking about how he used crystal methamphetamine. The Defendant said that he liked the drug because it kept him awake and horny.

The Defendant then sent the UC a photograph of what appears to be a young, possibly early pubescent Caucasian female who is wearing tight white tank top shirt.  The female does not appear to have any clothing or bra underneath her tank top, and she appears to have slight breast development.  After the Defendant sent the photograph, the following messages were exchanged:

> **DEFENDANT:** Are your tits bigger than hers
>
> **UC 2:** I think so
>
> **UC 2:** Who that?
>
> **DEFENDANT:** Just a friends and that I have been wanting to fuck for a couple years now

The Defendant later sent a video of himself smoking what appears to be methamphetamine inside the cab of his work truck and sent another photograph of his erect penis. He then stated: "you will like how mine feels" and "You pussy is probably super tight."

After more conversation, the following messages were exchanged:

> **DEFENDANT:** Have you met up with anyone lately
>
> **UC 2:** No hbu?
>
> **DEFENDANT:** No
>
> **UC 2:** Y not?
>
> **DEFENDANT:**  Because I want young

**GOVERNMENT'S SENTENCING MEMORANDUM - 10**

Later in the conversation, the Defendant stated: "A 9 year old messaged me a couple of hours ago." The Defendant followed up by stating: "I was almost asleep and the 9 year old messaged me next thing you know she had me hard as a rock lol."

***Summary of the search warrant execution***

In April of 2022, ICAC and ISP learned that each agency had an active investigation involving the Defendant. On May 12, 2022, ICAC obtained a federal search warrant to seize and search electronic devices on the Defendant's person and in his assigned work vehicle for evidence of the possession and distribution of child pornography. On May 16, 2022, ICAC, and other members of law enforcement, executed the search warrant when the Defendant was driving his work vehicle in Caldwell.

During the execution of the search warrant, ICAC seized the Defendant's cellphone, along with methamphetamine that was located in the Defendant's work vehicle. During an interview, the Defendant admitted to receiving, viewing, and distributing images of child pornography. The Defendant admitted to chatting online with underage girls and to receiving nude images from them. He also acknowledged masturbating while talking sexually to underage girls. The Defendant stated he would search online for "Caldwell teen," "young for old," and "Idaho teen."

ICAC forensically examined the Defendant's cellphone and located approximately 16 images and 84 videos of child pornography, including depictions of prepubescent children and toddlers engaged in sexual acts and even bestiality.

ICAC also located chat messages where the Defendant discussed his sexual interest in young girls and traded files of child pornography with other individuals. ICAC located a specific message exchange that took place on March 14, 2022, where the Defendant distributed to another individual a file of child pornography depicting a female child approximately 12 to 14

**GOVERNMENT'S SENTENCING MEMORANDUM - 11**

years of age and stated: "I need you to find me one like this."  The Defendant also told

individuals online that he was having sex with his 15-year-old step-daughter.

ICAC also located evidence showing that the Defendant frequently sent explicit videos of

himself to individuals who appeared to be minors and requested that they send him explicit

images and videos in return. One message in particular stated: "…now you just need to pull your

panties to the side and show me that nice young p*ssy."

## LEGAL ANALYSIS

The Ninth Circuit has set forth a basic framework that district courts should follow in

compliance with the Supreme Court's ruling in *United States v. Booker*, 543 U.S. 220 (2005):

(1)     Courts are to begin all sentencing proceedings by correctly determining the
         applicable sentencing guidelines range, precisely as they would have before
         *Booker*.

(2)     Courts should then consider the § 3553(a) factors to decide if they support the
         sentence suggested by the parties. Courts may not presume that the guidelines
         range is reasonable. Nor should the guidelines factors be given more or less
         weight than any other. The guidelines are simply to be treated as one factor
         among the § 3553(a) factors that are to be taken into account in arriving at an
         appropriate sentence.

(3)     If a court decides that a sentence outside the guidelines is warranted, then it must
         consider the extent of the deviation and ensure that the justification is sufficiently
         compelling to support the degree of the variance.

(4)     Courts must explain the selected sentence sufficiently to permit meaningful
         appellate review.

*United States v. Carty*, 520 F.3d 984, 991-92 (9th Cir. 2008).

## SENTENCING CALCULATION

**I.      Statutory Maximum and Minimum Sentence**

The penalties for a violation of 18 U.S.C. § 2252A(a)(5)(B) are up to 20 years

imprisonment, not less than five years and up to lifetime supervised release, a $250,000 fine, and

a $5,100 special assessment.

**GOVERNMENT'S SENTENCING MEMORANDUM - 12**

## II.        United States Sentencing Guidelines Calculation

"As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).

### A.        Offense Level Calculation

The Defendant's total offense level is 33.

### B.        Criminal History Calculation

The Defendant's criminal history category is I.

### C.        Advisory Guideline Range

The guideline range is 135 to 168 months.

## IMPOSITION OF SENTENCE

## I.        Imposition of a Sentence under 18 U.S.C. § 3553

### A.   18 U.S.C. § 3553(a) factors

The 3553(a) factors support a sentence of 135 months and do not support a sentence below the guideline range.

#### 1.        The nature and circumstances of the offense

The Defendant's repeated distribution and possession of child pornography is a serious offense that causes grave harm to the children depicted in the images and videos. The seriousness of the offense is reflected by the guideline range of 135 to 168 months. Such a significant guideline range reflects Congress' intent that individuals who traffic in child pornography should be severely punished. But for the Government's agreement to forego a distribution charge and permit the Defendant to plead guilty to possession, his guideline range would have been four levels higher. In other words, the Defendant has already received a substantial benefit from the Government, and he does not deserve a sentence below the guideline range.

**GOVERNMENT'S SENTENCING MEMORANDUM - 13**

The Defendant possessed images and videos that depict prepubescent children and toddlers subjected to horrific sexual abuse by adults including sexual intercourse, oral sex, and even bestiality. The Defendant's involvement in child pornography dates back to at least 2018, which is when ICAC received the first CyberTip. The Defendant's involvement in child pornography was so prevalent that he was the subject of four CyberTips that related to four different online accounts that he used to upload child pornography. Additionally, the Defendant communicated with two undercover detectives from a separate law enforcement agency that were posing as minor children online. This demonstrates a deeply rooted and long-standing pattern of exploiting children.

The images and videos that the Defendant possessed, and distributed, depict what are no doubt some of the most traumatizing moments of the child's life. The Defendant, by possessing and distributing these files for his own sexual gratification, further exploited these children and perpetuated the child pornography industry. Once distributed over the Internet, images and videos depicting the sexual abuse of a child will circulate in perpetuity because individuals like the Defendant made a purposeful decision to share their collections with others.

The Defendant possessed numerous images and videos of children who have previously been identified by law enforcement. These children live with the knowledge that there are numerous, unknown individuals in the world who are sexually gratifying themselves with pictures of the worst moments of their lives, and that such exploitation will continue indefinitely. The mother of one such identified victim submitted a victim impact statement (attached as an exhibit to the PSR) that details the horror it is to be a victim of child pornography. Her words are heartbreaking:

> Her little body is supposed to be her most valuable possession, and not intended to be available for unlimited exposure. She becomes powerless through your actions. I want to know how many times you indulged in watching my child be abused. How many other people did you share the abuse with? I want to make it clear to you that my child is not a sexual object or your toy! This child is my pride and joy. I love her more than anything in the world. Being a mom is all I have ever dreamed of. What I didn't ever dream of is her life being crushed by this horrendous crime.

It is clear that the Defendant, through his actions, has contributed to the pain and suffering of children.

Furthermore, by distributing child pornography, offenders like the Defendant, also enable and encourage the sexual desires of unknown individuals who may be even more dangerous. The sharing of child pornography, in connection with chat conversations on the internet, reduce inhibitions and affirm the beliefs of some individuals that their sexual interest in children is normal. The Defendant was clearly fostering his own deviant sexual interest in children, as well as that of other offenders.

Lastly and most importantly, the Defendant's conduct is much more egregious than the average possessor or distributor of child pornography. The Defendant was actively seeking out juvenile females online, engaging them in explicit conversation, and requesting that they produce explicit images of themselves to send to him. The Defendant also sent these juveniles pornographic images and videos and pictures of his penis. The Defendant admitted to routinely masturbating to sexual conversations he had with juvenile females online. It is unclear how many victims the Defendant created though this conduct. In this way, the Defendant is more akin to a producer of child pornography and the sentence must reflect that. The nature and circumstances of the offense weigh in favor of a significant prison sentence and do not support a variance.

**GOVERNMENT'S SENTENCING MEMORANDUM - 15**

2.      <u>The history and characteristics of the Defendant</u>

There is nothing about the Defendant's personal history or characteristics that would warrant a sentence less than 135 months. Quite the opposite. The Defendant's personal history and characteristics demonstrate that he is a predator.  The Defendant was involved in child pornography for years before he was apprehended by law enforcement.  Moreover, he is not just a possessor of child pornography, he is a distributor with a history of seeking out juveniles online to exploit.

U.S. Probation has recommended that the Court grant a variance and impose a sentence that is over two years below the low-end of the guideline range because of the Defendant's history of stable employment, prior military service, and mental health issues. The Defendant does not deserve such a variance. Although he has been employed throughout his adult life, he has also been breaking the law for most of his adult life. He has been possessing and using illegal drugs for well over 20 years and for at least the past several years has been exploiting children. Notably, the Defendant was using drugs and exploiting juveniles in the cab of his work truck.

Moreover, while the Government appreciates the Defendant's prior military service, it simply does not warrant a variance under the facts of this case. The Government acknowledges that individuals who experience trauma while serving our country may go on to have substance abuse or mental health issues that contribute to them committing certain types of crimes, such as drug offenses. Perhaps in that situation, a variance would be warranted. However, the Defendant's prior military service has no such relevance here. His prior service does not change the damage he has caused to the child victims or the danger he poses to the community. The Defendant's prior military service likely offers no solace for the victims. Simply put, the Defendant's personal history and characteristics are only one of the § 3553(a) factors that the Court must consider.  The Court also must consider the need for just punishment, deterrence, and

**GOVERNMENT'S SENTENCING MEMORANDUM - 16**

protection of the community. These factors outweigh any mitigating value that the Defendant's prior military service may have.

Finally, the Defendant's mental health issues do not excuse, justify, or explain his repeated exploitation of children. Numerous people in the world suffer from mental health issues, but they do not exploit children. There is simply no correlation. If anything, the Defendant's mental health issues, combined with his substance abuse issues and sexual attraction children, only serve to increase the risk he poses to the community. These issues will no doubt make it difficult for the Defendant to remain sober, control his impulses and behavior, and remain stable. The Defendant chose not to obtain a psychosexual evaluation, but the facts of the case clearly suggest that he is a predator and is a high risk to reoffend.

In sum, granting a variance under these facts would put children in our community at risk and would absolutely send the wrong message to the community.

        3.     <u>The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment.</u>

The Defendant's repeated use of the Internet to exploit juveniles through explicit conversation and requests for pictures, as well through the distribution and viewing of images of child pornography is a serious offense. A sentence of 135 months would promote respect for the law and represent a just punishment. A lesser sentence would seriously diminish the seriousness of the offense and would not offer the victims the appropriate justice.

        4.     <u>The need for the sentence imposed to afford adequate deterrence and to protect the public.</u>

As stated in *United States v. Goldberg*, "[s]entences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor. The logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it and so the more will be produced."

**GOVERNMENT'S SENTENCING MEMORANDUM - 17**

491 F.3d 668, 672 (7th Cir. 2007). *See also United States v. Goff*, 501 F.3d 250, 261 (3d Cir. 2007) (stating in child pornography possession case that "deterring the production of child pornography and protecting the children who are victimized by it are factors that should have been given significant weight at sentencing").

Based on the nature of Defendant's crime and conduct, there is a compelling need to deter future similar conduct by him and other like-minded individuals with an interest in child pornography. There is also a strong need to stop the supply and demand in the child pornography market to protect all minor victims from being re-victimized through the repeated viewing of the sexual abuse they endured and to prevent new minors from being victimized for the camera. Children are some of the most vulnerable members of our society. Individuals who seek to exploit children for their sexual desires must be deterred by the criminal justice system. A significant sentence of imprisonment is necessary to deter the Defendant and others from sexually exploiting children, and to protect children from further exploitation by the Defendant. A sentence below the guideline range would send the wrong message to the community.

5.   The need for the sentence imposed to provide the Defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner

The Bureau of Prisons ("BOP") can provide the Defendant with a sex offender treatment program. BOP has management programs located throughout the United States, at facilities with differing security levels. If the Defendant is designated to a BOP facility offering such a program, then sentencing the Defendant within the applicable guideline range would allow him time to participate in such treatment, if he volunteers for the program and makes good faith efforts at participation.

**GOVERNMENT'S SENTENCING MEMORANDUM - 18**

6.      The kinds of sentences available

Since the guideline range is in Zone D of the Sentencing Table, the guidelines provide

that the minimum term must be satisfied by a term of imprisonment. *See* USSG § 5C1.1(f).

7.      The established sentencing range

The guideline range is 135 to 168 months.

8.      Any pertinent policy statements

The Government has not identified any pertinent policy statements applicable to this

case.

9.      The need to avoid unwarranted sentence disparities

Although a sentence of 135 months is a more significant sentence than is usually imposed

for possession of child pornography, this is not a typical possession case because the Defendant

has also been engaging in sexually explicit conversation with juveniles, requesting that they

produce explicit images for him, and has been sending them pornographic material. In other

words, the Defendant has not only revictimized the children in the images and videos that he

possessed and distributed, but he also created new victims. The sentence imposed by the Court

must reflect this aggravating factor.

The Defendant's guideline range is higher than the average possession of child

pornography case because he received a five-level increase for distribution in exchange for

valuable consideration and he did not receive a two-level variance to eliminate the use of

computer enhancement. As noted in the plea agreement and the PSR, a computer variance is not

warranted because the Defendant used the computer to gain access to juvenile females. The

Defendant's guideline range reflects the aggravating circumstances that are present in this case,

as should the Court's sentence.

**GOVERNMENT'S SENTENCING MEMORANDUM - 19**

Moreover, lengthy periods of supervised release are common in this District for individuals convicted of sexual offenses. Below are just a few examples of recent cases sentenced in this District with facts less egregious than the ones in this case:

- *United States v. Jonathan Schmidt*, 1:19-cr-00293-DCN (15 years of supervised release for possession of child pornography for defendant who used BitTorrent to download and view child pornography and child pornography anime and admitted he possessed 120 videos and 11 images of child pornography and over 500 images of child pornography anime).

- *United States v. Troy Vandeventer*, 1:21-cr-00236-BLW (15 years of supervised release for possession of child pornography for defendant who used BitTorrent to distribute child pornography and possessed approximately 800 files of child pornography on computers)

- *United States v. Justin Yount*, 1:21-cr-00306-BLW (15 years of supervised release for possession of child pornography for defendant who pleaded guilty pre-indictment and admitted possessing over one thousand files of child pornography, but did not distribute it)

- *United States v. Arnulfo Gonzales-Torres,* 4:19-cr-00314-DCN (15 years of supervised release for possession of child pornography for defendant who used BitTorrent to possesses and distribute child pornography)

- *United States v. Stuart Bardan*, 1:20-cr-00167-DCN (10 years of supervised release for possession of child pornography for defendant who used email to distribute 4 files of child pornography and possessed approximately 126 images of child pornography on his cellphone)

**GOVERNMENT'S SENTENCING MEMORANDUM - 20**

- *United States v. Jared Cook*, 1:18-cr-00036-EJL (10 years of supervised release for possession of child pornography for defendant who pleaded guilty pre-indictment and admitted distributing 100 videos of child pornography to a Kik Messenger Chat Group via a link to a Dropbox folder, but did not possess images on his computer)

The defendants in the above-described cases received lengthy periods of supervised release. U.S. Probation has recommended 5 years of supervised release. Given the egregiousness of the offense and the Defendant's severe substance abuse and mental health issues, 5 years is not enough. A lengthier period of supervision is necessary to protect the community. This is especially true given that the Defendant has struggled to comply with the terms and conditions of probation in prior cases. 20 years of supervision is appropriate to protect the community.

<p style="text-align:center">10. <u>The need to provide restitution to any victims of the offense</u></p>

The Government and the Defendant have stipulated to restitution in the amount of $3,000 to the victim "Pia" of the Sweet White Sugar series. Although the Defendant possessed images of other identified victims, the Government only received a restitution request from the victim "Pia."

<p style="text-align:center">B. <u>Application of the Guidelines in Imposing a Sentence under 18 U.S.C. § 3553(b)</u></p>

The Government's within-guidelines recommendation is based in part on the fact that such a sentence properly reflects the accumulated wisdom and expertise of the Sentencing Commission and serves the vital goal of uniformity and fairness in sentencing. The guidelines, formerly mandatory, now serve as one factor among several that courts must consider in determining an appropriate sentence. *Kimbrough v. United States*, 552 U.S. 85, 90 (2007). Nonetheless, "the Guidelines Commission fills an important institutional role: It has the capacity courts lack to base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise." *Id.* at 108-09 (internal quotation marks omitted).

**GOVERNMENT'S SENTENCING MEMORANDUM - 21**

Thus, "the Guidelines Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" *Id.* (quoting *Rita v. United States*, 551 U.S. 338, 350 (2007)).

The guidelines are the sole means available for assuring some measure of uniformity in sentencing, thereby fulfilling a key congressional goal in adopting the Sentencing Reform Act of 1984. Reference to the guidelines, while carefully considering the § 3553(a) factors, is the only available means of preventing the disfavored result of basing sentences on the luck of the draw in judicial assignments. Therefore, "district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall*, 552 U.S. at 50 n.6.

The guidelines deserve significant respect. The Government recognizes that the guidelines are entirely advisory, and that a district court has discretion to vary from an advisory range, subject only to deferential appellate review for reasonableness. A district court, however, must consider the guidelines range, *see* § 3553(a)(4), and is usually well-advised to follow the Sentencing Commission's advice in order to assure fair, proportionate, and uniform sentencing of criminal offenders. Moreover, there are no other § 3553(a) factors in this case which mitigate against imposition of a sentence within that range; to the contrary, the § 3553(a) factors on balance support the imposition of the recommended guidelines sentence. Accordingly, the Government recommends a within-guideline sentence of 135 months.

**GOVERNMENT'S SENTENCING MEMORANDUM - 22**

## <u>CONCLUSION</u>

Application of 18 U.S.C. § 3553 supports a sentence of 135 months for the Defendant's

repeated online exploitation of children. A sentence of 135 months is sufficient, but not greater

than necessary, to accomplish the goals of sentencing.

Respectfully submitted this 1st day of August, 2023.

JOSHUA D. HURWIT.
UNITED STATES ATTORNEY
By:


*/s/ Kassandra J. McGrady*
KASSANDRA J. MCGRADY
Assistant United States Attorney

**GOVERNMENT'S SENTENCING MEMORANDUM - 23**